Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

Dallas Division

2017 AUG -7  PM 3: 40

DEPUTY CLERK

|  |  |
|---|---|
| Davie Harrison,Sr. | Case No. **317-CV2082-D** |
| _____ | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)*  [X] Yes  [ ] No |
| -v- | |
| Baylor University Medical Center At Dallas Baylor Scott & White,Dr.Sarah Anne Chang, Dr.Joshua Alexis Lemmon,Dr.Paul Edward Gray Jr.,Sean Danial Arredondo,Paul Danial Edward,Jon Wendell Harris,MD. | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Davie Harrison,Sr. |
| Address | P.O.Box 821061 |
| | North Richland Hills     Texas     76182 |
| | *City*                          *State*              *Zip Code* |
| County | Tarrant |
| Telephone Number | (817)489-4836 |
| E-Mail Address | |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Baylor University Medical Center(At Dallas |
| Job or Title *(if known)* | |
| Address | 3500 Gaston Ave. |
| | Dallas                    Texas     75246 |
| | *City*                          *State*              *Zip Code* |
| County | Dallas |
| Telephone Number | 214.820.0111 |
| E-Mail Address *(if known)* | |

[ ] Individual capacity   [X] Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Sarah Anne Chang . |
| Job or Title *(if known)* | Attending Physician |
| Address | 2800 State HWY 114 |
| | Trophy Club               Texas     76262 |
| | *City*                          *State*              *Zip Code* |
| County | Denton |
| Telephone Number | (817) 912-8800 |
| E-Mail Address *(if known)* | |

[X] Individual capacity   [X] Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Defendant No. 3

    Name      Dr.Joshua Alexis Lemmon

    Job or Title *(if known)*    Plastic Surgeons

    Address      3201 East George Bush Freeway Ste 101

     Richardson     Texas     75082

           *City*         *State*       *Zip Code*

    County      Dallas

    Telephone Number    (972) 470-5000

    E-Mail Address *(if known)*

    [X] Individual capacity    [X] Official capacity

Defendant No. 4

    Name      Sean Danial Arredondo

    Job or Title *(if known)*    Physician in Training Permit

    Address      101 North Brookside Dr. Apt.1416

     Dallas     Texas     75214

           *City*         *State*       *Zip Code*

    County      Dallas

    Telephone Number

    E-Mail Address *(if known)*

    [X] Individual capacity    [X] Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

    A.    Are you bringing suit against *(check all that apply)*:

        [ ] Federal officials (a *Bivens* claim)

        [X] State or local officials (a § 1983 claim)

    B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

        The Eighth Amendment,and the 14 Amendment

    C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

**The parties to This Complaintiff(s)**

**The Defendant(s)**

Defendant No.5

    Name               Paul Edward Gray Jr.

    Job or Title    Physician

    Address        Texas HealthCare,PLLC 1325 Pennsylvania Ave.Ste 720

                    Dallas       TEXAS    76104

                        City      State   Zip Code

                    [X]Individual      [X]Official capacity

Defendant No.6

    Name               Jon Wendell Harris

    Job or Title    Physician

    Address        11140 Joymeadow Dr.

                    Dallas       Texas   76104

                        City      State   Zip Code

                    [X] Individual     [X]Official capacity

Defendant No.7

    Name               Dr.Michael Lynn Foreman

    Job or Title    Medical Doctor

    Addres         2710 Swiss Ave

                    Dallas       Texas   Zip code 75204

                    [X]Individual       [X]Official capacity

Defendant No.8

    Name               Dr.Ronald Hardin

    Job or Title    Medical Doctor/Surgeon

    Address        2710 Swiss Ave.

                    Dallas       Texas         75204

                       City      State    Zip Code

                    [X]Individual      [X]Official capacity

CONT.PARTIES TO THIS COMPLAINT   8/5/17  Re: Davie Harrison, plaintiff prose

LET THE RECORD REFLECT,THAT THE DEFENDANT(S) IN THIS COMPLAINT
CAN BE SERVED TO THEIR REGISTERED AGENT:CT CORPORATION SYSTEM,
1999 BRYANT ST.,STE. 900,DALLAS COUNTY,DALLAS, TEXAS 75201-3136,
ALSO TO MICHELE SHEETS,SYSTEM DIRECTOR/ASSISTANT GENERAL COUNSEL
BAYLOR SCOTT & WHITE HEALTH 4005 CRUTCHER STREET,SUITE 300
214.818.0217 DIRECT DIAL,Michele Sheets@BSWHealth.org Baylor
ScottsndWhite.com

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

The defendants in this case employment such as hospitals that is ran under the umbrellas of the State and these defendants employment relationship with the State such the physician authorized by the State to provide medical care to a residence exercise power that is traditionally the exclusive prerogative of the State. In this case the hospital and physician abuse this power by demonstrating deliberate indifference to plaintiff serious medical needs.

III.  **Statement of Claim**

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  Where did the events giving rise to your claim(s) occur?

Baylor University Medical Center at Dallas/BailyScott&White

B.  What date and approximate time did the events giving rise to your claim(s) occur?

On or about 06/26/15 thru 08/10/15

C.  What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

Plaintiff was rush to this hospital on 06/11/2015from having a lethal amount of potassium in his blood,Acute renal failure,and respiratory Distress. Plaintiff underwent tracheostomy placement on 06/26/15 by the General Surgery service this done because of plaitiff's body habitus. Defendants Dr Chang, Dr Sean Arredondo at the time was a physician in training permit:BP 10046912 issue 7/1/13 ended 6/23/14 Terminated 6/30/14,meaning this defendant had no license to practice medicine,therby plaintiff was assaulted by this defendant. Defendant Dr.Michael Foreman,Ronald Hardin place this  trach knowing this procedure was not needed.Plaintiff family knew what happen. See in the exhibit section "operative Note:there are two notes dated the same but the information of the risk factors had been change.There was no understanding by plaintiff family.Plaintiff suffers from worsening respiratory failiure,and laboring in putting this complaint together,so there might be some spelling error.

**IV.  Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

The treatment that plaintiff did received concerning the Tracheostomy procedure cause physical harm and shorten plaintiff's life expectancy,having to use oxygen full time.This treatment was done to save plaintiff's life.

The hand injury was caused by the restraints the defendants'had placed on the plaintiff.Defendant Dr.Lemmons is a hand doctor and should have fix plaintiff's hand when he was this medical center.Instead he lied and conspire with the hospital staff claiming it was gout.See Attach Exhibits.

When plaintiff was found slump on the said of the bed with the trach had following out his mouth was a clear act of deliberate indifference to plaintiff's serious medical needs.When a nurse call plaintiff's family about this incident. The nurse stated:I don't know what kind of harm this had cause to plaintiff.

**V.  Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Plaintiff contend,that the defendant's conspire to harm the plaintiff,and falsify the medical records, to attempt justify the "Trach Procedure." By the plaintiff health is deteriorating from the harm cause by the hands of these defendants, and the plaintiff can't sing from his vocal cords being damage,plaintiffs hand injury that effected him playing his music instrument,and causeing plaintiff disability to become worst were he can't push his wheelchair.

Plaintiff seeks award of compensatory damages in the amount of $2.5 U.S. Dollars,and punitive deem equible by a judge or jury,which includes lost wages,and with open medical.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  08/05/2017

Signature of Plaintiff  *Davie Harrison Sr.*

Printed Name of Plaintiff  Davie Harrison Sr.

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number  (817) 489–4836

E-mail Address

UNITED STATES DISTRICT COURT

For the

Northern District of Texas

Dallas Division

| | | |
|---|---|---|
| DAVIE HARRISON | § | Case No._____ |
| Plaintiff, | § | |
| | § | |
| | § | COMPLAINT FOR VIOLATION OF |
| -V- | § | CIVIL RIGHTS PURSAUNT TO |
| | § | 42 U.S.C. § 1983,AND 42 U.S.C. |
| BAYLOR UNIVERSITY MEDICAL | § | § 12101,ENACTING THE AMERICANS |
| CENTER (AT DALLAS);CHANG SARAH | § | WITH DISABILITIES Act of(1990), |
| ANNE(MD);SEAN ARREDONDO,(MD); | § | and § 504 OF THE REHABILITATION |
| JON HARRIS,(MD);GRAY JR. | § | ACT OF 1973 PUB.L.NO.93-112,87 |
| PAUL EDWARD,(MD);LEMMON JOSHUA | § | STAT 394(Sept 26,1973)CODIFIED |
| ALEXIS(MD)& UNNAMED,KNOWN & | § | AT U.S.C. § 701 et seq.PLAINTIFF |
| UNKNOWN:AND CONTRACTED AFFLIA- | § | INVOKE UNDER TEXAS STATE LAW,TEXAS |
| TE(S);PERSONS,PERSON,ENTITY OR | § | HEALTH & SAFETY CODE,and CIVIL |
| ENTITIES,COMPANIES,CORPORATIONS. | § | PRACTICE & REMDIES CODE CAHPTER 74. |
| | § | |
| Defendants. | § | " JURY DEMAND" |
| | § | |

**COMPLAINT**

COMES  NOW unto the Court, Davie Harrison,plaintiff,appearing through pro se representation and respectfully shows unto the Court the following.

**JURISDICTION**

1. The Court has jurisdiction over the palintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331 and 1343,which inclùdes,The Americans with Disabilities Act of (1990),and 504 of the Rehabilitation Act of 1973,Pub.L.No.93-112,87 Stat 394(Sept.26,1973) Codified at 29 U.S.C. § 701 et seq.

2. The Court has supplemental jurisdiction over plaintiff's state law tort claims under 28 U.S.C § 1367,§ 166 Texas Health & Safety Code,and Civil Practice and Remdies Code Chapter 74.

1.

3.This Court has jurisdiction pursaunt to 42 U.S.C. § 12101 et seq.

PARTIES

4. **The Pla**intiff,Davie Harrison was a patient at Baylor University Medical Center(at Dallas),during the events described in this complaint.

5. Baylor University Medical Center is sued as a corporation,and Defendants Chang Sarah Anne(MD),Sean Arredondo,(MD),Jon Harris,(MD).

They are sued in their individual capacities.

6. Gray Jr.(MD),Paul Edward,(MD),Lemmon Joshua Alexis,(MD).They are sued in their individual capacities,and Foreman,Michael Lynn(MD).

7.These defendants furthermore or sued in their individual and official capacities.

8. All the defendants have acted,and continue to act,under Color of State Law at all times relevant to this complaint.

**STATEMENT OF FACTS**

9. On 06/11/2015,plaintiff was a patient at said Baylor University Medical Center suffering from Acute illness. On or about 06/21/15, defendant(s) Dr Michael,along with attending physician Chang,Sarah Anne wanted to do a "Tracheostomy" to plaintiff.These defendant(s) requested permission from plaintiff(s) family member whom was not plaintiff "Agent" nor had authority to make health care decisions that was delegated under a medical power of attorney pursuant to § 166.151(2) of the Texas Health & Safety Code.

10.The surgical procedure(s) was/were performed on 06/26/15.It is important to note,that plaintiff(s) family member was reluctant

2.

about this surgery,and asked the medical staff would this cause
plaintiff not to be able to sing,talk properly or have any other
throat/pharnyx problems(including having to use a voice box,due
to plaintiff's family member concern,and plaintiff's life long
profession of being a musician,singer & performer all over the
country mainly in the gospel arena since being a teenager.

11. It is very important to note,that the hospital staff which
includes the defendant(s) did not explain the serious consequences
of a tracheostomy procedure. Plaintiff family member was told
that there would be no problems,that throat would heal.The
defendants wanted this procedure done for their convenience,were
plaintiff was breathing on his own with some support.

12. This procedure has "Ruined"plaintiff's speaking,anxiety
and pain including difficulty in communications verbally with
others. The Major Complications after intubation,plaintiff suffers
from sore throat,layngeal oedema,chronic hoarseness,nerve injury,
vocal cord paralysis and aspiration.In the medical records of
the plaintiff at said Baylor University Medical Center the risk
factors includes damages to the esophagus,heart attack,stroke,
worsening respiratory failure.Since plaintiff discharge from
this hospital,he has been hospitalize 6 or 7 times for pneumonia,
worsening respiratory complications requiring continuous oxygen.

13. It is to be noted,the "Tracheostomy"Procedure was not a
Life-Sustaining Treatment.However plaintiff's life expectancy
have been a shortened lifespan by the hands of these defendant(s).

14. The conduct alleged above by the defendant(s) was clearly deliberate indifference to plaintiff(s) serious medical needs, while acting under color of law, and the challenged conduct deprived the plaintiff of a federal right against cruel and unusual punishment.

15. Plaintiff has shown/proven that the defendant(s) unconstitutional action was the "Cause in Fact" of the plaintiff injury.

16. While plaintiff was a patient at this medical facility, he was was under "Consistent Heavy Sedation," from 06/11/15 until mid July 2015. After plaintiff came from under sedation he had been moved from intensive care to room 833 were he was experiencing "Unbearable Pain" in his hands which he continued to signal and report to attending nurses, aides and family members. Plaintiff had on some type of hospital mittens(that were too tight snd small even for a female member(s) hand as a "much" smaller individual).

17. It is to be noted, that plaintiff had restraints used in intensive care. After plaintiff had been moved from intensive care, and sadation he notice he had on mittens that were too small, and plaintiff's hand's were curved into them "Very" tightly. After plaintiff continue to request pain medications, and Therapeutic assistance for his hand problem without success. An X-Ray was performed on 07/31/15.

18. The plaintiff's medical records revealed, that "[NO]" Systemic Arthritis was seen. The report from radiologist, Smerud, Micheal John, (MD), States: Both right and left Wrist Joints show slight widening between the Navicular and the Lunate.

4.

19. This can be associated with Ligamentous Laxity or Injury. The said Doctor's Impression: Findings suggestive of Scapholunate Dissociation Bilaterally,or Ligamentous Injury of the Wrist.

20. On 08/09/15,Plaintiff consulted with defendant Lemmon,Joshua Alexis MD,This Doctor/Defendant tried to turn the hand pain(with Family Present)as due to a (chronic Gout Attack). This defendant gave false information,stating that over the ensuing few days,the hand pain relented which it absolutely did and has not. Plaintiff was playing his keyboard a day or two before being a patient at this hospital,and never had any problems with his hands.

21. See Medical record Exhibit-B. Defendant Dr.Lemmon stated in his notes,that he was consulted to assess and to comment on whether this may represent and (Acute Injury). Defendant report also stated:(Temporarily),this was thought to have started following a period of time when the "[P]atient]"/Plaintiff had Bilateral Upper Extremity Restraints.

22. It's apparent that plaintiff's injuries to his hands were from the restraints he was placed in by the hospital staff(including the very small tight mittens). It very important to note,that during this time plaintiff was feed off a feeding tube that was in his stomach,and was not eating food that would cause a Gout Attack.

23. Plaintiff spent most of his two months stay at this hospital in intensive care,sedated and only on life-sustaining nutrition fluid,was not condusive to such inaccurate and/or incompetent findings or excuses.The hospital is liable for the injury plaintiff sustained when he was placed in restraints.Let the record reflect,

5.

24. When the plaintiff requested for a second opinion regarding his hand pain and apparent injury,the medical staff became very angry(as overly witnessed by family),the hospital had plaintiff "[P]"rematurely Discharged from the hospital the following day, which was 08/10/15.

25. Plaintiff was sent to Downtown Health & Rehab in Fort Worth, Texas. Plaintiff was assigned to this facility Occupational Therapist whom tried to work with plaintiff's hands. The pain was difficult to bear and continuous.Let the record reflect: What makes this such a bad situation,the injury to plaintiff's hands enhance the plaintiff disability for the fact plaintiff was/is a (1) legged amputee,and with the hand injuries,plaintiff cannot push his wheel-chair,after trying several weeks of painful therapy. A power wheel-chair was approved and the cost for the chair was $23,000.

26. What's sad about this case. The defendant's could have fix this problem while plaintiff was their patient. The next problem due to plaintiff's medical condition as of now,he may not get the surgery he needs to fix his hand,were there is a tear that only be fix by surgery only.The medical condition plaintiff has is the deliberate indifference that these defendants cause the plaintiff to suffer, It is to be noted that defendants Chang,Sarah Anne,Sean Arredondo,Jon Harris Gray,and Paul Edward,MD's were assistance with the Tracheostomy surgery.

6.

27. On or about 07/17/15,approx.2:30pm,Plaintiff's family member was called at her home from a nurse Shelby were plaintiff had been discharge from intensive care to a private room were this said nurse told plaintiff's family,that she found plaintiff slump over the side of the bed,and plaintiff Trach had falling out of his mouth,and was rush back to ICU from treatment and care.

28. Plaintiff don't know what injury or injuries may have occurred from this incident,but it reveal that there is a reasonable deduction that plaintiff was prematurely discharge from intensive care,and this reveals a great risk of physical harm,were the defendants knew of this risk to have plaintiff moved from ICU to quickly.

29. Plaintiff has made a second cause of action of deliberate indifference against the defendants in this case.Plaintiff's constitutional rights under the Eighth Amendment of the United States . Medical records from the defendant's unconstitutional action was the "[C]"ause' in Fact" of the plaintiff's injury.  The complaint States a Claim under the Eighth Amendment.

### SUMMARY OF ARGUMENT
### PLAINTIFF STATES A CAUSE OF ACTION UNDER SECTION § 1983

30. Plaintiff contends he has stated a cause of action under section § 1983. Plaintiff alleged two(2) elements: (1) challenged conduct by a person acting under color of law,and(2) challenged conduct that deprived the plaintiff of a Federal Right. For plaintiff to furthermore prevail under Section § 1983,plaintiff has proven that the defendants' unconstitutional action(s) were the"Cause in Fact"of the plaintiff's injury.Plaintiff ask of this Honorable Court for a jury trial if the defendants do not want to settle,and plaintiff

seeks Compensatory Damages for pain & suffering.See Relief.

## "SUPPLEMENTAL JURISDICTION
## PURSUANT TO 28 U.S.C. § 1367

31. Plaintiff contend both the "state and federal  claims in this case derive from a common nucleus of operative facts"so that plaintiff would,"ordinarily be expected to try them all in one judicial proceeding". When the entire action before the federal court comprises a single constitutional "case"the court may, under Article III,exercise jurisdiction over the action including the state-law claims.

32. Liability In Tort Chapter 74.001. As argue in the federal section of this § 1983,the defendant'should be personally liable to the plaintiff according to Texas law;and (2) The personal injury was caused by a condition or use of tangible personal or real property if the governmental unit would,were if a private person,be liable to the plaintiff according to Texas law.

33. The medical records to this case,are tangible were they were use fradulently that cause harm to plaintiff's future health,and life span.The defendant's are in violation of the Texas Health & Safety Code § 166.160(b) the defendant's failure to exercise due care in the provision of Health Care Services.

34. Plaintiff assert(s) that his family member that the defendant call to get authorization to give the Tracheostomy surgery was not qualified to give permission for this said surgery,was not a person or agent delegated under a medical power of attorney.§ 166.151.(2)

35. Plaintiff contends the physicians name as defendant's in this case or subject to civil or criminal liability,or disciplinary action were their acts or omission performed was not done in good faith under the direction of an agent who had a medical power of attorney,and knowing that the surgery they performed has lethal side effects that will cause death,and never gave plaintiff family member notice of these dangerous effects.It is very important to note that the physicians/defendant's fail to place in plaintiff's medical records,that he was incompetent that's required by Texas law. The trach or the hand injury was not preexisting injury.

## AMERICAN WITH DISBILITIES ACT(ADA) CLAIM

36. Plaintiff sues the defefant's pursuant to the American with Disabilities Act 42 U.S.C. §§ 12101-213(2006).Plaitiff makes this claim under the ADA were he has a physical impairment that substantially limits him of several of the major life activities. In this case he was discriminated thru health services.

37. The purpose of this chapter(1)to provide a clear and comprehensive national mandate for the elination of discrimination against individuals with disabilities;(2)to provide clear,strong consistent,enforceable standards addressing discrimination against individuals with disabilities;(3)to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities, and (4)to invoke the sweep of congressional authority,including the power to enforce the fourteenth amendment and to regulate commerce,in order to address the major areas of discrimination faced day to day by people with disabilities.This law applies

9.

to this case,which includes the fourteenth amendment.

38. Plaintiff invoke the ADA and Section 504,contain their own definitions of discrimination. As alleged in the lawsuit,the defendant's prematurely discharge plaintiff with only 30min notice and there is a reasonable deduction that race played a major role in this. The defendant's failure to treat plaintiff's hands are make reasonable accommodations to the needs of plaintiff a disabled person.In a sense,there are three theories of discrimination under the ADA and Section 504:(1)intentional discrimination (2)discriminatory impact,and(3)a refusal to make a reasonable modification oraccommodation discrimination.

39. Section 504 Safety Net. To the extent that Title II is cirumscribedly by Sovereign immunity in future cases,Section 504 will pick up the slack Section 504 rests on the Spending Clause. The hospital accepting federal money has an agreed-upon quid pro quo obligation to implement disability law requirements that are virtually the same as those required by the ADA.Section 504 of the Rebabilitation Act of 1973,Pub.L.No. 93-112,87 Stat.394(Sept. 26,1973)codified at 29 U.S.C. § 701et seq.,is American legistation that guarantees certain rights to disabled people.

## THE ELEVENTH AMENDMENT AND

## SOVEREIGN IMMUNITY

40.The Eleventh Amendment does not forbid suing state officials for damages in their individual capacities,and for declaratory or injunctive relief in their official capacities. Local governments even in damages suits. Plaintiff furthermore contends that

the defendants in this case was not,and is not acting as an"arm
of the state"and do not have sovereign immunity from lawsuits
authorized by federal law. <u>See Northern Ins.Co.of New York v.
Chatham County,Georgia,547 U.S.189,194,126.S.Ct.1689(2006).</u>

41. Thereby,plaintiff makes clear that he is suing the defendants
in this case for compensatory and punitive damages from them being
state officials,so they are being sued in their individual and
personal capacities. Plaintiff furthermore sued the defedants
in their official capacity for injunctive relief.

**<u>ARGUMENT</u>**

42. The United States Supreme Court has ruled that "deliberate
indifference to serious medical needs" is cruel and unusual punish-
ment;<u>See: Estelle v.Gamble,429 U.S.97,104(1976).</u>This suit alleges
facts that state a constitutional claim under this standard.

43. Plaintiff relies on the court ruling in Gomez v.Toledo,446
US 635 638(1980). In Gomez the United States Supreme Court deter-
mined that only two elements must be pled to properly assert a
cause of action under 42 U.S.C. § 1983. First the plaintiff must
specifically identify the constitutional right of which he was
deprived. Plaintiff must assert that the person who deprived him
of that Federal right,acted under Color of Law.

44. Plaintiff has proven with facts,and medical records with
other relevant documentation in the record,that the defendant's
unconstitutional actions were the"cause in fact"of the plaintiff's

11.

injuries that continue to cause"great"adversity on a daily basis
and serious future health concern. See attached exhibits.

45. Based on the holding of the Supreme Court that the "wanton
and unnecessary infliction of pain"constitutes cruel and unusual
punishment. The defendants'acted with"deliberate indifference"to
Plaintiff's serious medcial needs,and physical safety in accordance
to well established Federal law.

46. In establishing"Deliberate Indifference"(1) that there existed
a"great degree of medical and physical harm;(2)that the defendants
knew of these risks(3)the defendants' took no or wholly inadequate
action where there is a reasonable deduction that these acts or
omissions were done intentionally,knowingly,and arbitraily in
the face of actual and factual knowledge of risks to plaintiff,and
(4) that the defendant's actions and/or omissions were more than
inadvertence,lack of due care,negligence or human error. These
actions reflect reckless behavior,callous neglect and/or thoughtless
disregard equivalent to a flagrant and/or remarkably bad failure
to protect.

47. It is obduracy and wantonness,not just inadvertence or error
in good faith that characterizes this prohibited conduct.

48. The prohibition against torture is firmly embedded in customary
international law,international treaties signed by the United
States,and in U.S.law.As the U.S.Department of State has noted,the
"United States has long been a vigorous supporter of the internat-
ional fight against torture...Every unit of government at every
level within the United States is committed,by law as well as

By policy,to the protection of the individual's life,liberty and physical integrity,"[U.S.Department of State],"Initial Report of the United States of America to the UN Committee Against Torture." ."Oct 15,1999(Nov.15,2001)]. It is to be noted that plaintiff has continue to suffer from mental anguish,distress,anxiety,fright, depression,grief,and Psychological torture by the hands of the defendant(s),whom had no right by the United States Constitution to place this type harm and injury to plaintiff.

49. It is to be noted that plaintiff mail the defendant(s) a demand/ intent to sue letter dated: July 12,2017. On July 26,2017,plaintiff received a respone from the defendants regarding plaintiff demand letter.The defendant's ask opportunity to fully review and evaluate the claim,and that plaintiff contact them before he take any further formal action on this matter. Plaintiff did give notice that his claim had to be file before the statute of limitation runs out which is August 10,2017.The defendant(s) response seem to except liability.

50.As shown in the medical records concerning the Operative Summary States: The risk,benefits,alternatives,potential complications, and the procedures themselves were "[Explained to the Family]."

51. What family member or the defendant's reference? Did these family members have medical power attorney over plaintiff? How much of the HIPAA laws have been violated? The answer to this question there was "no" power of attorney. [Restated]; There is no doubt that the defendant(s) was acting under color of law,and in violation of this said law pursuant to 18 U.S.C. Code § 242. **Plaintiff seeks criminal charges under this statute.**

## RELIEF REQUESTED

52. Plaintiff seeks relief from Baylor University Medical Center at Dallas/Baylor Scott & White,and physician(s) that are all defendant(s) in this case. Plaintiff seeks award of compensatory, and punitive damages,and loss wages in the amount of $2.5 Million U.S.Dollars,with open medical,also criminal charges of conspiracy, assault,and falsifying government records.

53. That the Honorable Court/Jury grant such relief as it may appear that plaintiff is entitled in equity and law.

Respectfully Submitted,

*Davie Harrison Sr.*

DAVIE HARRISON SR.

P.O.Box 821061
North Richland Hills,TX.76182
Email: peaceful66@live.com
Phone: (817) 489-4836

**<u>EXHIBIT(S)</u>**

EXHIBIT _B

THIS MEDICAL DOCUMENT SHOWS DEFENDANT"S DOCTOR LEMMON STATEMENT ABOUT
PLAINTIFF'S HAND INJURY.

| BaylorScott&White HEALTH | **Brief Consult Note** | | | | Visit Type Inpatient | |
|---|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | Discharge Date/Time 08/10/2015 13:25 | | Authored Date/Time 08/09/2015 16:40 | Attending Physician CHANG, SARAH ANNE | |

## LEMMON, JOSHUA ALEXIS : Plastic Surgery

### Reason for Consult

→ bilateral wrist

Ⓐ

### Impression/Plan

→ 1. Hand pain

Patient seen and examined.  Chart, history, and films reviewed.  Briefly, this is a patient with multiple medical problems (including chronic gout) who during this admission suffered sudden onset bilateral wrist pain (right somewhat worse than left).  Temporally, this was thought to have started following a period of time when the patient had bilateral upper extremity restraints.  The patient reports severe pain at least 8-10/10 and pain with even the slightest touch or motion.  Over the ensuing few days, the pain relented.  Xrays were obtained and   *not* these demonstrated bilateral widened scapholunate intervals.  I was consulted to assess and to comment on   *true!* whether this may represent an acute injury.

Briefly, the history and symptomatology (along with the persistently elevated uric acid level) suggest a gouty attack.  Chronic gout is known to be associated with scapholunate dissociation.   *see renal inefficiency 's*

I've recommended bilateral wrist splints as needed for symptom improvement.  No need for other treatment at this time.

### Electronic Signatures:
**LEMMON, JOSHUA ALEXIS (MD)** (Signed 08-09-2015 16:49)
  Author: Brief Consult Note

Last Updated: 08-09-2015 16:49 by LEMMON, JOSHUA ALEXIS (MD)

| Visit 61630500 MRN 10263965 | Baylor University Medical Center at Dallas Brief Consult Note SC60199 |
|---|---|

| PATIENT NAME: | HARRISON, DAVIE | DOB/AGE:11-16-1953/61y |
| ACCESSION: | 4679507 | SEX:M |
| COMPLETED: | 07-31-2015 02:06 PM | MRN:10263965 |
| ORDERING PROVIDER:AGURA, ASHLEY ANNE | | ACCOUNT#:61630500 |

## DX HAND MIN 3V BI PORT (FINAL)

Three views of the left hand show no fracture or dislocation.  The
joint spaces are well maintained.  Mineralization is normal.  No
erosions are identified.

*(Hand Issue!)*

Three views of the right hand also appear normal.  No fracture is
seen.  Joint spaces are well maintained.  Mineralization is
unremarkable. No systemic arthritis is seen.

*No hand arthritis as said by a doctor.*

Both right and left wrist joints show slight widening between the
navicular and the lunate.  This can be associated with ligamentous
laxity or injury.

Impression:  Findings suggestive of scapholunate dissociation
bilaterally.

Interpreted by:  Smerud, Michael John MD, Radiologist
Responsible Radiologist:  Smerud, Michael John, MD, Radiologist
Edited By:  325 Interface
Electronically Signed By: Smerud, Michael J. MD, Radiologist
Date/Time: 07/31/2015 02:13 PM

*Nearing fast discharge after consistent severe hand pain, multiple requests for appropriate therapy or surgery — quickly discharged 8/10/15.*

HARRISON, DAVIE
Enterprise Patient ID:1005622542
MRN: 10263965/Account#: 61630500
DX HAND MIN 3V BI PORT(FINAL)
Radiology Report

PRINTED: 04/13/2017 08:16 AM                                    Page: 1 of 1

EXHIBIT-C

THESE ARE THE TWO OPERATIVE SUMMARY THAT REVEALS THE SERIOUS
COMPLICATIONS OF A  TRACH PROCEDURE,AND WERE THE DEFENDANT(S)
CLAIM THEY EXPLAIN THE RISK TO PLAINTIFF"S FAMILY.

| BaylorScott&White HEALTH | **Operative Note** | | | | Visit Type Inpatient | |
|---|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | Discharge Date/Time 08/10/2015 13:25 | Authored Date/Time 06/26/2015 14:00 | | Attending Physician CHANG, SARAH ANNE | |

### Anesthesia Type

Sedation

*[handwritten: Very Very Important Re: your throat problems! and continuous respiratory problems !!]*

### Estimated Blood Loss

Minimal

### Specimen(s)

None

### Drains

None

### Complications

None

### Operative Summary

The risks, benefits, alternatives, potential complications, and the procedures themselves were explained to the family, as the patient is intubated and sedated and unable to participate in the informed consent process. The risks include, but are not limited to: bleeding, infection, acute and chronic pain, scar tissue formation, subglottic stenosis, damage to structures of the neck and / or respiratory tract including the mouth, pharynx, larynx, tracheobronchial tree, esophagus, muscles, and nerves, and blood vessels of the neck, heart attack, stroke, worsening respiratory failure, emergency airway loss, and death. They verbalized understanding and desire to undergo the procedures and gave informed consent.

The procedures took place at the patient's bedside in the intensive care unit with continuous telemetry, pulse-oximetry, mechanical ventilation, and blood pressure monitoring. The patient was given deep sedation anesthesia consisting of fentanyl, midazolam, and rocuronium.

Time out performed.

| Visit 61630500 MRN 10263965 | Baylor University Medical Center at Dallas Operative Note SC60289 |
|---|---|

| BaylorScott&White HEALTH | **Operative Note** | | | | Visit Type Inpatient | |
|---|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | | Discharge Date/Time 08/10/2015 13:25 | Authored Date/Time 07/10/2015 13:22 | Attending Physician CHANG, SARAH ANNE | |

### Assistant(s)

Jon Harris, MD

### Anesthesia Type

Sedation

### Estimated Blood Loss

None

### Specimen(s)

None

### Drains

None

### Complications

None

### Operative Summary

The risks, benefits, alternatives, potential complications, and the procedures themselves were explained to the patient's family, as the patient is intubated and sedated and unable to participate in the informed consent process. The risks include, but are not limited to: bleeding, infection, acute and chronic pain, scar tissue formation, damage to esophagus/stomach/duodenum, need for further procedures, heart attack, stroke, and death. The patient's family verbalized understanding and desire to undergo the procedures and gave informed consent.

| Visit 61630500 MRN 10263965 | Baylor University Medical Center at Dallas Operative Note SC60289 |
|---|---|

EXHIBIT-D

THIS EXHIBIT REVEAL THAT DEFENDANT(S) DR.RONALD HARDIN,DR.MICHAEL
FOREMAN,DR.SEAN ARREDONDO WHOM HAD A MEDICAL PERMIT EXPIRED
DOING THE TIME HE WAS PERFORMING SURGERY WITHOUT MEDICAL AUTHORIZA-
TION.

| BaylorScott&White HEALTH | **Operative Note** | | | | Visit Type Inpatient |
|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | Discharge Date/Time 08/10/2015 13:25 | Authored Date/Time 06/26/2015 14:00 | Attending Physician CHANG, SARAH ANNE | |

## ARREDONDO, SEAN : Surgery

*Very Important b!*

### Date of Operation

06/26/2015

### Indication(s)

Respiratory failure

### Procedure(s) Performed

Percutaneous tracheostomy tube placement

### Findings

Uneventful placement of tracheostomy tube placement.

### Surgeon

Ronald Hardin, MD

### Co Surgeon

Michael Foreman, MD (bronchoscopist)

### Assistant(s)

Sean Arredondo, MD

EXHIBIT-E

THIS MEDICAL DOCUMENT REVEAL DEFENDANT DR.PAUL EDWARD GRAY JR.
PARTICIPATION IN THE SURGERY THAT WAS NOT ADEQUATELY AUTHORIZED.

| BaylorScott&White HEALTH | | **Operative Note** | | | | Visit Type Inpatient | |
|---|---|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | | Discharge Date/Time 08/10/2015 13:25 | Authored Date/Time 07/10/2015 13:22 | | Attending Physician CHANG, SARAH ANNE | |

The procedures took place at the patient's bedside in the intensive care unit with continuous telemetry, pulse-oximetry, mechanical ventilation, and blood pressure monitoring. The patient was given deep sedation anesthesia consisting of fentanyl, midazolam, and rocuronium. See ICU record for further details.

Time out was performed.

The flexible fiberoptic endoscope was introduced by mouth and passed under direct vision into the esophagus. The stomach was identified and insufflated with air. After full insufflation transillumination was carried out and a point was selected on the anterior surface by Dr. Foreman.
The duodenum was cannulated.
Entry into the stomach was identified with the finder and then the placement needle for the PEG kit. The guidewire was grasped and brought back with the scope through the mouth. The gastrostomy tube was fed back antegrade over the wire and the bumper was then followed with the EGD scope back into the stomach. Positioning of the PEG tube was confirmed. No significant bleeding was noted.
Notable findings at the time of EGD include normal esophagus, normal stomach, several small, benign-appearing hyperplastic polyps in duodenal bulb. Recommend follow up for repeat endoscopy to follow polyps, after current medical conditions improve.
The scope was carefully withdrawn after aspirating collapsing the stomach. Patient remains in the intensive care unit under appropriate monitoring.

**Post Operative Plan**

See PEG report

**Electronic Signatures:**
**GRAY JR, PAUL EDWARD (MD)** (Signed 07-10-2015 13:25)
  Author: Operative Note

Last Updated: 07-10-2015 13:25 by GRAY JR, PAUL EDWARD (MD)

EXHIBIT-F

THIS MEDICAL DOCUMENT REVEALS DEFENDANT(S) DR.SEAN ARREDONDO,AND
DR.RONALD DAVID HARDIN JR. OPERATIVE NOTES CONCERNING THE TRACH
PROCEDURE.

| BaylorScott&White | Operative Note | | | Visit Type<br>Inpatient | |
|---|---|---|---|---|---|
| **Patient Name**<br>HARRISON, DAVIE | | **MRN # / Visit #**<br>10263965/61630500 | **DOB**<br>11/16/1953 | **Age**<br>61y | **Sex**<br>M |
| **Discharge Location**<br>BUMC-8R-0826-A | **Admit Date/Time**<br>06/11/2015 09:38 | **Discharge Date/Time**<br>08/10/2015 13:25 | **Authored Date/Time**<br>06/26/2015 14:00 | **Attending Physician**<br>CHANG, SARAH ANNE | |

First, a complete bronchoscopy was performed by Dr. Foreman.  Please see separate report for details.

The anterior neck was then prepped and draped. The skin and soft tissues anterior to the trachea were infiltrated with  10 mL of 1% lidocaine with epinephrine. A scalpel was used to make a small transverse midline anterior cervical incision midway between the cricoid cartilage and the sternal notch. Blunt dissection was used to dissect to the level of the trachea. The endotracheal tube was then withdrawn in stepwise fashion using the bronchoscope light for guidance until the bronchoscope light was clearly visualized through the surgical opening. A needle with introducer sheath was then passed through the surgical opening and into the anterior trachea as visualized internally with the bronchoscope. A guidewire was then passed through the introducer sheath and down the distal trachea as visualized internally with the bronchoscope. The introducer sheath was then removed. Serial dilations were performed over the guidewire using the dilators in the kit, and then a 8 mm internal diameter cuffed silastic Bivona tracheostomy was passed over the dilator and guidewire into good intraluminal position within the trachea as seen internally with the bronchoscope. The guidewire and dilator were then removed. The bronchoscope was then passed through the tracheostomy and the carina was visualized. The bronchoscope was then removed. The tracheostomy balloon cuff was then insufflated with sterile water until appropriately full, and the patient was ventilated through the tracheostomy with good return of tidal volume. The tracheostomy was then anchored to the skin bilaterally with 3-0 nylon sutures, and a soft tracheostomy collar was placed. The bronchoscope was passed again through the endotracheal tube, and the tracheostomy site was visualized and there was no internal bleeding. The bronchoscope and endotracheal tube were then removed.

The patient tolerated the procedures well. There were no immediate complications.


**Post Operative Plan**

Respiratory care per critical care team


**Electronic Signatures:**
**ARREDONDO, SEAN (MD, Resident)**  (Signed 06-26-2015 14:02)
    *Authored: Operative Note*
**HARDIN JR, RONALD DAVID (MD)**  (Signed 06-26-2015 16:43)
    *Co-Signer: Operative Note*

*Last Updated: 06-26-2015 16:43 by HARDIN JR, RONALD DAVID (MD)*

| Visit 61630500<br>MRN 10263965 | Baylor University Medical Center at Dallas<br>Operative Note SC60289 |
|---|---|

| BaylorScott&White HEALTH | Attestation - Consult | | | | Visit Type Inpatient | |
|---|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | Discharge Date/Time 08/10/2015 13:25 | | Authored Date/Time 07/09/2015 18:45 | Attending Physician CHANG, SARAH ANNE | |

## FOREMAN, MICHAEL LYNN : Surgery

*Important!* (handwritten)

**Attestation:**

Patient seen and examined. Dr Kastners note reviewed and confirmed. Examination and plan as detailed in the resident note except as noted.
This note was dictated using voice recognition. While proofed, it remains subject to errors and omissions.

*It is important to note! Consistent documentation of multiple medical problems shows he need specialty medical care prior to hospitalization, but received none since Tristar!* (handwritten)

**Summary:**

Patient with multiple medical problems. Underwent tracheostomy several days ago. Now with persistent dysphagia. PEG tube is been requested.
On examination, there is no obvious surgical contraindication to attempting. Patient's abdomen is quite obese with a thick pannus. It would not be surprising if we are unable to transilluminate as a result of this.
Tentatively planned for PEG attempt tomorrow.


**Electronic Signatures:**
**FOREMAN, MICHAEL LYNN (MD)** (Signed 07-09-2015 18:48)
   Author: Attestation - Consult

Last Updated: 07-09-2015 18:48 by FOREMAN, MICHAEL LYNN (MD)

| Visit 61630500 MRN 10263965 | Baylor University Medical Center at Dallas Attestation - Consult SC60280 |
|---|---|

EXHIBIT-G

THIS MEDICAL DOCUMENT SHOWS THE DISCHARGE SUMMARY SHOWING THE
REASON FOR THE TRACHEOSTOMY PLACEMENT ON 6/26/15 DUE TO PLAINTIFF
BODY HABITUS.

| **BaylorScott&White** HEALTH | **Discharge Summary** | | | | Visit Type Inpatient | |
|---|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | | Discharge Date/Time 08/10/2015 13:25 | Authored Date/Time 08/05/2015 15:26 | Attending Physician CHANG, SARAH ANNE | |

1. <u>Acute respiratory failure:</u> The patient was initially placed on BiPap in the emergency department however, shortly after his arrival to the ICU he required intubation and mechanical ventilation. The patient's respiratory failure was likely the result of volume overload in the setting of acute renal failure in the setting of diastolic heart failure and was complicated by his encephalopathy and inability to protect his airway. Due to his encephalopathy he did self extubate at one point however was unable to maintain his respiratory status without ventilatory support. He subsequently underwent tracheostomy placement on 6/26/15 by the General Surgery service followed by PEG placement on 7/10/15. It was recommended by the Pulmonary Service that the patient keep his trach due to his body habitus. He was saturating on room air at the time of his transfer to Downtown Health and Rehab.

2. <u>Acute renal failure:</u> The patient was initially transferred from his prior NH with renal failure and hyperkalemia. It was presumed that the patient had a normal Cr previously as he has been on Metformin for his diabetes. His creatinine did peak at 6.8 and improved to 1.4 at the time of discharge which was felt to be his baseline. Nephrology followed the patient throughout his hospitalization. Initially there was concern that the patient's renal failure was due to obstructive uropathy however he did not demonstrate dilation of the upper track of his urinary system and the timing of his recovery was inconsistent with obstructive uropathy. The patient did not require dialysis during his hospitalization. The etiology of the patient's renal failure remained obscure at the time of discharge.

3. <u>Encephalopathy:</u> The patient did present with severe encephalopathy that complicated his respiratory failure. MRI imaging as well as EEG were unremarkable for etiology. It is suspected that his encephalopathy was likely metabolic in etiology. His mental status had returned to baseline at the time of discharge. He was oriented x 3 at the time of discharge.

4. <u>Accelerated hypertension:</u> The patient demonstrated difficult to control blood pressure and required multiple medications and titration for control. There was concern for poor absorption as the patient's blood pressure control improved with addition of a Clonidine patch.

5. <u>Uncontrolled Type 2 Diabetes:</u> The patient has been on Januvia and Metformin as an outpatient for management of his diabetes. Though his HgbA1C was 7.8% he remained significant hyperglycemic and required large dose of insulin for control. He has been discharged to rehab with insulin.

6. <u>C diff diarrhea:</u> The patient did have 2 episodes of C diff diarrhea while hospitalized. He will complete a course of oral Vancomycin on discharge.

7. <u>Hand pain:</u> There was concern for possible ligamentous injury as the etiology of the patient's reported hand pain. Dr. Lemon reviewed the imaging and examined the patient and felt it was most consistent with gout and recommended wrist splints and the patient had symptomatic improvement. *Not totally true.*

| Visit 61630500 MRN 10263965 | Baylor University Medical Center at Dallas Discharge Summary SC60306 |
|---|---|

EXHIBIT-H

THIS IS THE THE DEMAND LETTER THAT WAS SENT BY THE PLAINTIFF
TO THE DEFENDANT(S),RESPONSE LETTER TO THE DEMAND LETTER,BY
THE DEFENDANT(S).

JUNE 1, 2017

TO: BAYLOR UNIVERSITY MEDICAL CENTER (AT DALLAS)
   3500 GASTON AVE., DALLAS, TEXAS 75246
C/O: CT CORPORATION SYSTEM, 1999 BRYAN ST., STE. 900,
   DALLAS COUNTY, DALLAS, TEXAS 75201-3136

FROM: **MR. DAVIE HARRISON, CLAIMANT/INJURED VICTIM**

RE: ADMIT DATE: 6/11/15, ENTERPRISE PATIENT ID: 1005622542

ACCT: 61630500

### DEMAND/INTENT TO SUE LETTER

   EACH OF THE FOLLOWING PERSONS, PERSON, ENTITY OR ENTITIES, COMPANIES, CORPORATION(S) OR LEGALLY AND/OR CONTRACTED AFFILIATE(S), NAMED & UNNAMED, KNOWN & UNKNOWN THAT WERE INVOLVED IN THE ABOVE-REFERENCED CLAIM WILLFULLY, AND/OR ARBITRARILY COMMITTED THESE ACTS AND/OR OMISSIONS <u>CAUSING PAIN & SUFFERING AND MENTAL ANGUISH DUE TO BUT NOT LIMITED TO, SERIOUS LOSS OF QUALITY OF LIFE WITH DAMAGE TO FUTURE HEALTH, WELLNESS AND LIFE EXPECTANCY</u>.  THESE ADVERSE ACTIONS AND OR RESULTS WERE CAUSED BY DOCTORS AND MEDICAL STAFF **<u>ACTING UNDER THE COLOR OF STATE LAW, WHICH VIOLATED SEVERAL PROVISION(S) OF THE TEXAS HEALTH & SAFETY CODE, AND CHAPTER 74 OF THE TEXAS CIVIL PRACTICE REMEDIES CODES - STATE. CLAIMANT ALSO ALLEGES "DELIBERATE INDIFFERENCE" TO MEDICAL NEED WAS VIOLATED AS PROVIDED FOR AND DESCRIBED IN THE AMERICAN WITH DISABILITIES ACT (ADA), WHICH ALSO CONSTITUTES "CRUEL AND UNUSUAL PUNISHMENT" TO CLAIMANT, AS GOVERNED BY THE EIGHTH AMENDMENT OF THE U.S. CONSTUTION.</u>**

   1. **LET THE RECORD RELECT:** THAT THERE WAS GOOD SERVICE, AND THERE WAS BAD SERVICE WITH NEGLIBILE AND/OR PROCEDURAL TREATMENT THAT CAUSED CLAIMANT TO SUFFER SEVERE LIFE-THREATING HARM, AND MORE DISABILITIES.  THERE ARE TWO (2) PRIMARY INJURIES REGARDING THIS <u>DEMAND/INTENT TO SUE LETTER.</u>

   2. ON 6/26/15, SURGICAL PROCEDURE(S) WAS/WERE PERFORMED, A PERCUTANEOUS TRACHEOSTOMY TUBE PLACEMENT.  MY MEDICAL RECORDS, DATED 7/10/15, REVEAL THERE WERE "NO" COMPLICATIONS, AND, MEDICAL RECORDS DATED 6/26/15 REVEAL(S) **FINDINGS "UNEVENTFUL PLACEMENT OF TRACHEOSTOMY TUBE PLACEMENT"**.  THE ATTENDING PHYSICIAN WAS

1

CHANG, SARAH ANNE,; ASSISTANT(S) WERE SEAN ARREDONDO, MD., JON HARRIS, MD., GRAY JR., AND PAUL EDWARD, MD.

THE OPERATIVE NOTE DATED 7/10/15, STATES THAT THERE WERE "NO" COMPLICATIONS. **IT IS VERY IMPORTANT TO NOTE**: THAT THE OPERATIVE SUMMARY STATES; THE RISK, BENEFITS, ALTERNATIVES, POTENTIAL COMPLICATIONS, AND THE PROCEDURES THEMSELVES WERE EXPLAINED TO THE PATIENT'S FAMILY.

FIRST, THE HOSPITAL STAFF DID NOT EXPLAIN THE SERIOUS CONSEQUENCES OF A TRACHEOSTOMY PROCEDURE. IN FACT, CLAIMANT'S FAMILY MEMBER WAS "VERY" RELUCTANT ABOUT THIS SURGERY, AND ASKED THE MEDICAL STAFF WOULD THIS CAUSE CLAIMANT NOT TO BE ABLE TO SING, TALK PROPERLY OR HAVE ANY OTHER THROAT/PHARNYX PROBLEMS, (INCLUDING HAVING TO USE A VOICE BOX, DUE TO HER EXTREME CONCERN & CLAIMANT'S LIFE-LONG PROFESSION OF BEING A MUSICIAN, SINGER & PERFORMER ALL OVER THE COUNTRY MAINLY IN THE GOSPEL ARENA SINCE BEING A TEENAGER). THE FAMILY MEMBER WAS TOLD THERE WOULD BE NO PROBLEMS, THAT IT WOULD CLOSE UP, HEAL AND NOT AFFECT HIS VOICE, VOCAL CHORDS OR SINGING ABILITIES (ALTHOUH THIS PROCEDURE **"TRULY"** HAS **RUINED** CLAIMANT'S SPEAKING, SINGING AND PERFORMING ABILITIES (THAT HAVE BEEN WELL KNOWN BY **MANY** WITNESSES) THUS FAR, PERHAPS FOREVER, AND IT'S VERY UNCOMFORTABLE, PAINFUL, AND PRODUCES **DAILY** ANXIETY & PAIN, INCLUDING DIFFICULTY IN COMMUNICATION VERBALLY WITH OTHERS). NO OTHER RISKS OR POTENTIAL COMPLICATIONS WERE EXPLAINED TO FAMILY ABOUT THIS PROCEDURE, AND HOW THEY MAY AFFECT THE CLAIMANT.

3. SECONDLY, WHEN THE HOSPITAL STAFF REQUESTED PERMISSION TO DO THIS PROCEDURE, CLAIMANT'S FAMILY DID NOT GIVE CONSENT RIGHT AWAY DUE TO THE ABOVE LISTED FEARS AND SINCE THE PHYSICIAN EXPLAINED THE PROCEDURE WAS JUST FOR THE STAFF'S **"CONVENIENCE"** WHEN DEALING WITH THE BREATHING SUPPORT PROCEDURES, ALTHOUGH THE CLAIMANT WAS BREATHING ON HIS OWN EVEN WITH SUPPORT. THE MEDICAL STAFF(S) DECISION TO DO THIS PROCEDURE PLACED CLAIMANT'S LIFE AND SAFETY AT RISK OF HARM AND/OR DEATH. CLAIMANT SUFFERS FROM THE **MAJOR COMPLICATIONS** MENTIONED IN THE REVIEW STUDY OF DR. DIVATIA J. V., AND DR. BHOWMICK K. AFTER INTUBATION, CLAIMANT SUFFERS FROM SORE THROAT, LAYNGEAL OEDEMA, CHRONIC HOARSENESS, NERVE INJURY, VOCAL CORD PARALYSIS AND ASPIRATION. CLAIMANT SUFFERS FROM GRANULOMA OF THE VOCAL CORDS. SINCE CLAIMANT WAS DISCHARGED FROM BAYLOR UNIVERSITY MEDICAL HOSPITAL AT DALLAS ON 8/10/15, HE HAS BEEN HOSPITALIZED WITH PNEUMONIA 6 TO 7 TIMES TO DATE. [RESTATED] THIS PROCEDURE (REGARDING THE TRACHEOSTOMY) WAS CONVENIENT FOR THE STAFF AND/OR THE HOSPITAL, BUT THE RISK WAS <u>MUCH TOO HIGH FOR THE CLAIMANT'S LIFE AND HIS FUTURE HEALTH</u>.

2

4.  THE TRACHEOSTOMY PROCEDURE WAS NOT A LIFE-SUSTAINING TREATMENT.   THE PRINCIPAL ATTENDING PHYSICIAN AND/OR PROVIDERS ARE SUBJECT TO CIVIL OR CRIMINAL LIABILITY AND/OR DISCIPLINARY ACTION(S), WHERE THEIR ACT(S) AND/OR OMMISSION(S) WERE NOT PERFORMED IN GOOD FAITH UNDER THE **DIRECTION OF AN AGENT WHO HAD A "[MEDICAL POWER OF ATTORNEY"].**

5.  THE CLAIMANT'S FAMILY MEMBER WAS NOT AN AGENT WITH AUTHORITY TO MAKE HEALTHCARE DECISION(S) THAT WAS/WERE DELEGATED UNDER A MEDICAL POWER OF ATTORNEY; SEE § 166.151(2) TEXAS HEALTH & SAFETY CODE.   IT IS TO BE NOTED ALSO THAT THE DOCTOR(S) FAILED TO PLACE IN CLAIMANT'S MEDICAL RECORDS THT CLAIMANT WAS INCOMPETENT.

INJURY TWO (2) HAND INJURY

6.  AFTER CLAIMANT CAME FROM UNDER "CONSISTENT HEAVY SEDATION AND CLAIMANT WAS MOVED FROM THE INTENSIVE CARE UNIT TO A PRIVATE ROOM, CLAIMANT WAS EXPERIENCING **"UNBEARABLE PAIN"** IN HIS HANDS, WHICH HE CONTINUED TO SIGNAL AND REPORT TO ATTENDING NURSES, AIDES AND FAMILY MEMBERS.   THERE WAS MORE PAIN IN CLAIMANT'S RIGHT HAND THAN THE LEFT HAND.   CLAIMANT HAD ON SOME TYPE OF HOSPITAL MITTENS (THAT WERE TOO TIGHT AND SMALL EVEN FOR A FEMALE FAMILY MEMBER'S HAND AS A "MUCH" SMALLER INDIVIDUAL).   CLAIMANT ALSO HAD RESTRAINTS USED IN INTENSIVE CARE.

7.  THE HOSPITAL MITTENS USED ON CLAIMANT'S HANDS WERE TOO SMALL, AND CLAIMANT'S HAND WERE CURVED INTO THEM "VERY" TIGHTLY. AFTER THE MITTENS WERE TAKEN OFF OF CLAIMANT, HE WAS STILL HAVING "INTENSE" PAIN.   THE CLAIMANT CONSITENTLY INFORMED THE MEDICAL STAFF AND HIS FAMILY ABOUT THIS SERIOUS AND PAINFUL MEDICAL MATTER.   THE CLAIMANT ALSO ASKED FOR PAIN MANAGEMENT AND THERAPEUTIC ASSISTANCE FOR HIS HAND PROBLEM WITHOUT SUCCESS.   AN X-RAY WAS PERFORMED ON 7/31/15.

8.  THE CLAIMANT'S MEDICAL RECORDS REVEALED, THAT **"[NO']"** **SYSTEMIC ARTHRITIS WAS SEEN.**   THE REPORT FROM THE RADIOLOGIST, SMERUD, MICHAEL JOHN, MD. STATES:   BOTH RIGHT AND LEFT WRIST JOINTS SHOW SLIGHT WIDENING BETWEEN THE NAVICULAR AND THE LUNATE.   THIS CAN BE ASSOCIATED WITH LIGAMENTOUS LAXITY OR INJURY.   THE SAID DOCTOR'S IMPRESSION:   FINDINGS SUGGESTIVE OF SCAPHOLUNATE DISSOCIATION BILATERALLY, OR LIGAMENTOUS INJURY OF THE WRIST.

9.  ON 8/9/15, CLAIMANT CONSULTED WITH **LEMMON, JOSHUA ALEXIS MD.** THIS DOCTOR TRIED TO TURN THE HAND PAIN (WITH FAMILY PRESENT) AS DUE TO A (CHRONIC GOUT ATTACK).   THIS DOCTOR GAVE FALSE INFORMATION,

3

STATING THAT OVER THE ENSUING FEW DAYS, THE HAND PAIN RELENTED, WHICH IT ABSOLUTELY DID **AND HAS NOT.** **LET THE RECORD REFLECT**: THE CLAIMANT HAS NEVER SUFFERED WITH GOUT IN THE HAND/WRIST OR FINGER AREAS, NOR HAD ANY TYPE OF HAND INJURY. AS A MATTER OF FACT, THE CLAIMANT HAS BEEN A WELL-KNOWN MUSICIAN SINCE CHILDHOOD, AND HAS USED HIS HANDS WITHOUT PAIN OR ISSUE TO THE DAY HE WAS HOSPITALIZED AT BAYLOR ON 6/11/15 (WITH MANY WITNESSES, FAMILY AND NON-FAMILY TO THAT EFFECT). HE WAS ACTUALLY PLAYING HIS INSTRUMENT "QUITE WELL" AND NORMALLY, AS WELL AS SINGING ALONG VERY TALENTLY, WITH FAMILY VISITORS AT HIS ASSIGNED NURSING/REHAB FACILITY, AT THE BEGINNING OF THE WEEK BEFORE HE BECAME DEATHLY ILL, THEN TRANSPORTED TO BAYLOR UNIVERSITY HOSPITAL WITH **SERIOUSLY** ELEVATED POTASSIUM LEVELS.

10. THIS SAID DOCTOR (LEMMON, J. A. MD.) STATED IN HIS NOTES, THAT HE WAS CONSULTED TO ASSESS AND TO COMMENT ON WHETHER THIS MAY REPRESENT AN (ACUTE INJURY). DR. LEMMON'S REPORT ALSO STATED: TEMPORARILY, THIS WAS THOUGHT TO HAVE STARTED FOLLOWING A PERIOD OF TIME WHEN THE **PATIENT HAD BILATERAL UPPER EXTREMITY RESTRAINTS**.

11. IT'S APPARENT THAT CLAIMANT'S INJURIES TO HIS HANDS WERE FROM THE RESTRAINTS HE WAS PLACED IN BY THE HOSPITAL STAFF (INCLUDING THE VERY SMALL TIGHT MITTENS). CLAIMANT'S URIC ACID LEVEL MIGHT HAVE BEEN HIGH DUE TO THE RENAL INEFFICIENCY, BUT IT DID NOT CAUSE THE INJURY TO CLAIMANT'S HANDS OR ANY GOUT ATTACK. CLAIMANT'S DIET RIGHT AT 2 MONTHS OF BEING HOSPITALIZED, MOSTLY IN INTENSIVE CARE, SEDATED AND ONLY ON LIFE-SUSTAINING NUTRITION FLUID, WAS NOT CONDUSIVE TO SUCH INACCURATE AND/OR INCOMPETENT FINDINGS OR EXCUSES.

12. THE HOSPITAL IS LIABLE FOR THE INJURY CLAIMANT SUSTAINED WHEN HE WAS PLACED IN RESTRAINTS. **IT IS VERY IMPORTANT TO NOTE**: THAT WHEN THE CLAIMANT REQUESTED FOR A SECOND OPINION REGARDING HIS HAND PAIN AND APPARENT INJURY, THE MEDICAL STAFF BECAME VERY ANGRY (AS OVERLY WITNESSED BY FAMILY), AND HAD CLAIMANT **'PREMATURELY DISCHARGED'** FROM THE HOSPITAL (WHILE FAMILY WORKED TIRELESSLY WITH STAFF TO PROVIDE HIM MORE CARE, NECESSARY TESTING AND TREATMENT, ESP. FOR HIS HANDS), THEN SENT **INVOLUNTARILY** AND WITHOUT FAMILY INPUT (WHO WAS WORKING WITH THE SOCIAL WORKER TO LOCATE A SUITABLE FACILITY OF 'CHOICE' & LOCALE FOR CONTINUED FAMILY SUPPORT), TO DOWNTOWN HEALTH (A NURSING HOME) & REHAB IN FT. WORTH, TEXAS.

13. AFTER CLAIMANT WAS ASSIGNED TO THIS NURSING FACILITY, CLAIMANT WAS ASSIGNED AN OCCUPATIONAL THERAPIST WHOM TRIED TO WORK WITH CLAIMANT'S HANDS. THE PAIN WAS DIFFICULT TO BEAR AND

4

CONTINUOUS. **LET THE RECORD REFLECT**: THAT THIS MATTER WAS SO TERRIBLE AND HARMFUL BECAUSE CLAIMANT WAS ALREADY A ONE (1) LEGGED AMPUTEE, AND WITH THE HAND INJURIES, CLAIMANT COULD NOT PUSH HIS WHEELCHAIR (AS HE ALWAYS COULD). THEREBY, THE OCCUPATIONAL THERAPIST PUT IN A REQUEST FOR A POWER WHEELCHAIR, AFTER TRYING SEVERAL WEEKS OF PAINFUL THERAPY. THE POWER WHEELCHAIR WAS APPROVED AND THE COST FOR THE CHAIR WAS **$23,000**.

14. ON 6/28/17, THE CLAIMANT WAS SEEN BY A HAND SPECIALIST AND HAD AN MRI PERFORMED ON HIS RIGHT HAND, AND THE MRI REVEALED A **'TEAR' THAT REQUIRED SURGERY.** THE CLAIMANT'S PRIMARY DOCTOR IS RELUCTANT IN CLAIMANT GETTING THIS SURGERY, DUE TO UPPER-RESPIRATORY PROBLEMS CONTINUOUSLY SUFFERED BY THE CLAIMANT FROM THE TRACHEOSTOMY.

15. **ON A PERSONAL NOTE:** THE CLAIMANT CONTENDS THAT HE HAS CONTINUED TO SUFFER FROM THE HARM THIS HOSPITAL HAS CAUSED MAINLY HIM, CLAIMANT'S CHILDREN, AND HIS GRAND-CHILDREN. THIS OVERALL HARM HAS COST THE CLAIMANT EVEN THE FORMER INDEPENDENCE AND/OR QUALITY OF LIFE HE HAD 'PRIOR' TO THESE PROBLEMS CAUSED BY BAYLOR UNIVERSITY HOSPITAL & STAFF INVOVLED. IT'S "VERY" CLEAR, THAT THESE DOCTORS AND HOSPITAL STAFF FAILED TO EXERCISE DUE CARE IN THE PROVISION OF HEALTH CARE SERVICES IN ACCORDANCE TO § 166.153 TEXAS HEALTH & SAFETY CODE.

16. **IT IS A REASONABLE DEDUCTION:** **THAT THE INDIVIDUAL AND COMBINED ACTIONS OF ALL INVOLVED AND AFFILIATED** IN THE ABOVE-REFERENCED CLAIM, CAUSED INJURIOUS, CONTINUOUS FUTURE DAMAGES AND HARM TO THE CLAIMANT, DAVIE HARRISON. THIS HARM INCLUDES BUT IS NOT LIMITED TO, DELIBERATE INDIFFERENCE TO HIS VERY SERIOUS MEDICAL NEEDS (AND NO-FAULT) INJURIES, AND VIOLATIONS OF SEVERAL OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS. FURTHERMORE, CLAIMANT IS ENTITLED TO LOST WAGES AND FUTURE EARNING CAPABILITIES AND/OR LIMITATIONS.

17. FOR A FAIR RESOLVE OF MATTERS "OUTSIDE OF THE COURT SYSTEM" A **DEMAND AMOUNT OF $2.5 MILLION U.S. DOLLARS., WITH MEDICAL LIABILITY FOR TREATMENT** Ð ℍ .

18. THIS DEMAND LETTER IS PURSUANT TO THE STOWER'S DUTY/ DOCTRINE. IN THE EVENT OF ANY OUT OF COURT SETTLEMENT, THE CLAIMANT WILL FULLY AND UNCONDITIONALLY RELEASE THE INSURED FROM ANY FURTHER LIABILITY. DUE TO THE STATUTE OF LIMITATIONS, THE CLAIMANT GIVES 8 WORKING DAYS FOR AN ANSWER, AND IF THIS REQUEST IS DENIED, THE CASE WILL BE FILED IN FEDERAL COURT BY 8/9/15.

SINCERELY,                                          PO BOX 821061

5

NRH, TX 76182
(817) 489-4836
(214) 489-9528

DAVIE HARRISON – RE: BAYLOR ACCT. NO. 61630500/ ADMISSION – ABOUT 6/11/15.

cc:   TEXAS BOARD MEDICAL EXAMINERS
      TEXAS BOARD OF NURSING

<u>AFFIDAVIT IN SUPPORT</u>

<u>OF</u>

<u>CLAIMANT'S DEMAND/INTENT TO SUE LETTER</u>

I, Florence Hill, am over the age of eighteen years old and a resident of Tarrant County, Texas since 2006.  This Affidavit is in support of this Demand/Intent to Sue Letter and is attached to and made a part of this document by reference herein.

Respectfully submitted,

PRINTED NAME: _Florence  Hill_

SIGNED NAME: _Florence Hill_

DATE SIGNED: _7/10/17_

NOTARY:

In the County of Tarrant;

In the State of Texas.

NOTARY SIGNATURE & DATE:_____

**TEXAS ORDINARY CERTIFICATE OF ACKNOWLEDGMENT**
**CIVIL PRACTICE & REMEDIES CODE § 121.007**

The State of Texas

County of _TARRANT_

Before me,

_JAIME MARTINEZ JR, NOTARY PUBLIC_ ,
*Name and Character of Notarizing Officer,*
*e.g., "John Smith, Notary Public"*

on     this     day     personally     appeared

_____

*Name of Signer*

☐ known to me
☐ proved to me on the oath of

_____

*Name of Credible Witness*

☑ proved to me through _TEXAS DRIVER'S_

_LICENSE EXPIRES 02|09|2021_
*Description of Identity Card or Document*

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this

_10th_ day of _JULY_ , _2017_ .
*Day*           *Month*           *Year*

_Jaime Martinez Jr._
*Signature of Notarizing Officer*

JAIME MARTINEZ JR
My Commission Expires
March 22, 2019

Place Notary Seal and/or Stamp Above

──────── **OPTIONAL** ────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _AFFIDAVIT IN SUPPORT OF CLAIMANT'S DEMAND/INTENT TO SUE LETTER_

Document Date: _N/A_                                         Number of Pages: _1_

Signer(s) Other Than Named Above: _N/A_

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5243

# BAYLOR UNIVERSITY MEDICAL CENTER

PATIENT NAME: Harrison, Davie      ADMIT DATE: 06/11/2015 03:01 AM
MRN / ACCOUNT #: 10263965 / 61630500      DICTATION DATE/TIME:
DOB / AGE / SEX: 11/16/1953 / 63Y / M      PROVIDER: Glatz, Robert

## ED DISPOSITION SUMMARY

Discharge Summary
Baylor University Medical Center
Name:Davie Harrison
Emergency Department
Age:61 yrs
Sex:Male
DOB:11/16/1953
MRN:10263965
Arrival:06/11/2015
03:01
Account#:61630500
Departure Date06/11/2015
Departure Time12:11
Private MD:
Outcome: Admit
Location: *ICU
Condition: Stable
Chief Complaint: Abnormal Lab Results
Diagnosis: Hyperkalemia - Acute, - Acute renal failure, Urinary
  Retention- Acute, - Morbid obesity, Respiratory Distress- Acute
Prescriptions:
Custom Notes:
Attending Physician: Glatz, Robert, MD
Private MD:
Mid Level Provider:
Admit Physician: Chang, Sarah, MD
Orders: ABG (Arterial Blood Gas), CBC (Complete Blood Count), CMP
  (Comprehensive Metabolic Panel), PT (Prothrombin Time) w/ INR, PTT
  (Partial Thromboplastin Time), BNP (B Type Natriuretic Peptide),
  Troponin I, UA (Urinalysis), POC CG8+, Urine Microscopic,
  Automated, BMP (Basic Metabolic Panel): Repeat at 0700, POC Whole
  Blood Glucose, POC Whole Blood Glucose, Creatine Kinase, CXR 1 View
  XRAY Portable, Calcium Gluconate, Insulin Regular Human, D50W,
  Albuterol, AtroVENT (0.02%), D 10 in Water, Sodium Bicarbonate, CT
  Brain/Head WITHOUT IV Contrast, Kayexalate, Insulin Regular Human,
  D50W, POC Whole Blood Glucose, POC Whole Blood Glucose, DuoNeb
  (Albuterol 2.5 mg, AtroVENT 0.5 mg);, Basic Metabolic Panel, ABG
  (Arterial Blood Gas)/Resp, EKG/Clerk, EKG/Tech, Old EKG, Foley,
  Bipap/Resp, Resp/Assist 30min-1hr, Resp/Med Neb Continuous,
  Consult-Dallas Nephrology Associates (Nephrology), Consult-Med
  Provider (Internal Medicine, Med Provider), Bipap/Resp, DStick
  Every Hour, Allscripts Orders for Review, Allscripts Orders for
  Review, Allscripts Orders for Review, Allscripts Orders for Review,
  Allscripts Orders for Review, Allscripts Orders for Review,
  Allscripts Orders for Review, Allscripts Orders for Review,

| ⊞ BaylorScott&White HEALTH | **Operative Note** | | | | Visit Type Inpatient | |
|---|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | Discharge Date/Time 08/10/2015 13:25 | Authored Date/Time 06/26/2015 14:00 | Attending Physician CHANG, SARAH ANNE | | |

## Anesthesia Type

Sedation

*Very Very Important*
*Re: Your throat problems !*
*and continuous respiratory*
*problems !!*

## Estimated Blood Loss

Minimal

## Specimen(s)

None

## Drains

None

## Complications

None

## Operative Summary

The risks, benefits, alternatives, potential complications, and the procedures themselves were explained to the family, as the patient is intubated and sedated and unable to participate in the informed consent process. The risks include, but are not limited to:  bleeding, infection, acute and chronic pain, scar tissue formation, subglottic stenosis, damage to structures of the neck and / or respiratory tract including the mouth, pharynx, larynx, tracheobronchial tree, esophagus, muscles, nerves, and blood vessels of the neck, heart attack, stroke, worsening respiratory failure, emergency airway loss, and death.  They verbalized understanding and desire to undergo the procedures and gave informed consent.

The procedures took place at the patient's bedside in the intensive care unit with continuous telemetry, pulse-oximetry, mechanical ventilation, and blood pressure monitoring.  The patient was given deep sedation anesthesia consisting of fentanyl, midazolam, and rocuronium.

Time out performed.

| Visit 61630500 MRN 10263965 | Baylor University Medical Center at Dallas Operative Note SC60289 |
|---|---|

| BaylorScott&White HEALTH | **Attestation - Consult** | | | | Visit Type Inpatient | |
|---|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | Discharge Date/Time 08/10/2015 13:25 | | Authored Date/Time 07/09/2015 18:45 | Attending Physician CHANG, SARAH ANNE | |

## FOREMAN, MICHAEL LYNN : Surgery

**Attestation:**

 Patient seen and examined. Dr Kastners note reviewed and confirmed. Examination and plan as detailed in the resident note except as noted.
This note was dictated using voice recognition. While proofed, it remains subject to errors and omissions.

**Summary:**

Patient with multiple medical problems.  Underwent tracheostomy several days ago.  Now with persistent dysphagia.  PEG tube is been requested.
On examination, there is no obvious surgical contraindication to attempting.  Patient's abdomen is quite obese with a thick pannus.  It would not be surprising if we are unable to transilluminate as a result of this.  Tentatively planned for PEG attempt tomorrow.

**Electronic Signatures:**
**FOREMAN, MICHAEL LYNN (MD)** (Signed 07-09-2015 18:48)
   Author: Attestation - Consult

Last Updated: 07-09-2015 18:48 by FOREMAN, MICHAEL LYNN (MD)

| Visit 61630500 MRN 10263965 | Baylor University Medical Center at Dallas Attestation - Consult SC60280 |
|---|---|



| BaylorScott&White HEALTH | Brief Consult Note | | | Visit Type Inpatient | |
|---|---|---|---|---|---|
| Patient Name HARRISON, DAVIE | MRN # / Visit # 10263965/61630500 | | DOB 11/16/1953 | Age 61y | Sex M |
| Discharge Location BUMC-8R-0826-A | Admit Date/Time 06/11/2015 09:38 | Discharge Date/Time 08/10/2015 13:25 | Authored Date/Time 08/09/2015 16:40 | Attending Physician CHANG, SARAH ANNE | |

## LEMMON, JOSHUA ALEXIS : Plastic Surgery

### Reason for Consult

bilateral wrist

Ⓐ

### Impression/Plan

1. Hand pain
Patient seen and examined. Chart, history, and films reviewed. Briefly, this is a patient with multiple medical problems (including chronic gout) who during this admission suffered sudden onset bilateral wrist pain (right somewhat worse than left). Temporally, this was thought to have started following a period of time when the patient had bilateral upper extremity restraints. The patient reports severe pain at least 8-10/10 and pain with even the slightest touch or motion. Over the ensuing few days, the pain relented. Xrays were obtained and *not true!* these demonstrated bilateral widened scapholunate intervals. I was consulted to assess and to comment on whether this may represent an acute injury.

Briefly, the history and symptomatology (along with the persistently elevated uric acid level) suggest a gouty attack. Chronic gout is known to be associated with scapholunate dissociation. *See renal inefficiency &*

I've recommended bilateral wrist splints as needed for symptom improvement. No need for other treatment at this time.

**Electronic Signatures:**
**LEMMON, JOSHUA ALEXIS (MD)** (Signed 08-09-2015 16:49)
  Author: Brief Consult Note

Last Updated: 08-09-2015 16:49 by LEMMON, JOSHUA ALEXIS (MD)

| Visit 61630500 MRN 10263965 | Baylor University Medical Center at Dallas Brief Consult Note SC60199 |
|---|---|

# BAYLOR UNIVERSITY MEDICAL CENTER

| | | | |
|---|---|---|---|
| **PATIENT NAME:** | HARRISON, DAVIE | **DOB/AGE:** 11-16-1953/61y | |
| **ACCESSION:** | 4679507 | **SEX:** M | |
| **COMPLETED:** | 07-31-2015 02:06 PM | **MRN:** 10263965 | |
| **ORDERING PROVIDER:** AGURA, ASHLEY ANNE | | **ACCOUNT#:** 61630500 | |

## DX HAND MIN 3V BI PORT (FINAL)

Three views of the left hand show no fracture or dislocation.  The
joint spaces are well maintained.  Mineralization is normal.  No
erosions are identified.

*(Hand Issue!)*

Three views of the right hand also appear normal.  No fracture is
seen.  Joint spaces are well maintained.  Mineralization is
unremarkable. No systemic arthritis is seen.

*No hand arthritis as said by a doctor.*

Both right and left wrist joints show slight widening between the
navicular and the lunate.  This can be associated with ligamentous
laxity or injury.

Impression:  Findings suggestive of scapholunate dissociation
bilaterally.

Interpreted by:  Smerud, Michael John MD, Radiologist
Responsible Radiologist:  Smerud, Michael John, MD, Radiologist
Edited By:  325 Interface
Electronically Signed By: Smerud, Michael J. MD, Radiologist
Date/Time: 07/31/2015 02:13 PM

*Nearing fast discharge after consistent severe hand pain, multiple requests for appropriate therapy or surgery — quickly discharged 8/10/15.*

**HARRISON, DAVIE**
Enterprise Patient ID:1005622542
MRN: 10263965/Account#: 61630500
DX HAND MIN 3V BI PORT(FINAL)
Radiology Report

 BaylorScott&White
H E A L T H

Michele Sheets,
System Director |Assistant General Counsel
4005 Crutcher Street, Suite 300
Dallas, Texas 75246
214.818.0217 Direct Dial
214.820.2384 Facsimile
Michele.Sheets@BSWHealth.org
BaylorScottandWhite.com

July 24, 2017

**CMRRR 7013 2250 0001 3338 3377**
**And**
**Regular USPS**
Mr. Davie Harrison
P.O. Box 821061
North Richland Hills, Texas 76182

RE:   **Letter dated June 1, 2017, regarding your medical treatment at Baylor University Medical Center beginning June 11, 2015**

Dear Ms. Harrison:

I am writing to confirm that we have received your letter dated June 1, 2017, directed to Baylor University Medical Center and others regarding your hospital stay. The Risk Management Department at Baylor Scott & White Health will be handling this matter. Please do not have any direct contact with anyone within the Baylor Scott & White Health system who provided care to you, or regarding the care provided to you, other than with my staff or me. Please direct any and all calls, correspondence or other communication or requests relating to this matter to my attention or contact my paralegal, Lianna Roberts at 214-818-7089.

We do want the opportunity to fully review and evaluate this claim and then discuss the claim with you. Consistent with that, and although we expect we will be in contact with you, we do ask that you contact us before you take any further formal action on this matter.

If you have any additional information (e.g., outside medical records, EMS records, pharmacy records, notes, photographs or x-ray films) that you would like for us to review in evaluating this matter, please forward those items to my attention.

I thank you for your attention to and cooperation in these matters.

Sincerely,

BAYLOR SCOTT & WHITE HEALTH

Michele Sheets,
System Director | Assistant General Counsel

MS/llr